UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEANETTE L. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-1906-SNLJ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Jeanette Smith's applications for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Smith now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

**I.     Procedural History**

Smith's application was denied at the initial determination level. She then appeared before an Administrative Law Judge ("ALJ"). The ALJ found Smith is not disabled because her symptoms were not supported by the medical evidence available. Smith then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration. The Appeals Council denied review. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§

1

404.981, 416.1481. Smith now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II. Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant

3

is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. The ALJ's Decision

At Step One, the ALJ found Smith met the insured status requirements through September 30, 2014, and had not engaged in substantial gainful activity since December 8, 2009. (Tr. 19). At Step Two, the ALJ found Smith suffers from four medically

4

determinable impairments: (1) status-post myocardial infarction with stent placement; (2) endovascular coiling of right posterior communicating artery aneurysm; (3) obesity; and (4) status-post carpal tunnel release. (Tr. 19-20).[1] At Step Three, the ALJ concluded Smith does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 21).

Next, in beginning the analysis of Step Four, the ALJ determined Smith's RFC.[2] The ALJ found that Smith

> has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except: never climbing ropes, ladders or scaffolds; no more than occasionally climbing ramps and stairs; no more than occasionally stooping, kneeling, crouching and crawling; no more than frequent handling, fingering, and feeling bilaterally; and never working at unprotected heights and with or around moving machinery. The

---

[1] Smith briefly recites the opinions of one of the consultative psychological evaluators who concluded Smith has depressive disorder and a GAF score of 50—the latter indicating serious difficulties with social, occupational, and educational functioning. (Tr. 874-878); *see also* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 32 (4th ed. Am. Psychiatric Ass'n. 1994). The ALJ gave "little weight" to these opinions because they were "inconsistent" with the evaluator's own notes, which further described Smith as having the capability to "maintain[] adequate social interactions" and engage in "multi-step instructions." (Tr. 25, 878). To the extent Smith emphasizes her GAF score, the Court notes the latest version of the Diagnostic and Statistical Manual of Mental Disorders, DSM-V released in 2013, no longer uses GAF scores because of their "conceptual lack of clarity" and "questionable psychometrics in routine practice." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 16 (5th ed. Am. Psychiatric Ass'n. 2013). In any event, Smith does not appear to seriously challenge the ALJ's conclusions on this point—she focuses, instead, on her physical ailments. Therefore, the Court does not view Smith has having made a challenge to the ALJ's findings regarding her mental capabilities.

[2] In the past, there has been some confusion as to when the RFC is determined, which affects who holds the burden of proof in establishing an appropriate RFC. In this Circuit, it has been held that "the RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (*quoting Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000)); *see also Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014) ("Steps 4 and 5 require the ALJ to determine a claimant's RFC[.]").

claimant must also avoid concentrated exposure to wetness, humidity, vibrations, pulmonary irritants and extreme heat and cold.

(Tr. 21). As part of this determination, the ALJ found Smith's allegations about her physical symptoms' intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 26). The ALJ noted "treatment notes indicate[,] at best, ailments that appear troublesome[] but do not impose limitations of such significance as to preclude sustained competitive employment." (*Id.*). The ALJ surveyed the records and found that, in total, they revealed only mild, well-controlled, improving, and/or normal-to-near-normal symptomology. (Tr. 26-27). For example, it was emphasized that Smith's cardiac impairments were "stable" as of 2017, with no history "indicat[ing] ongoing angina." The ALJ specifically highlighted Smith's admission that she was "walking at least 4 days a week for 20-25 minutes" and could walk "a mile on flat ground and climb 4 flights of stairs." (Tr. 26, 1271-1273). Prior to that, Smith was noted by another doctor as having a "normal" stress test and "no chest pain." (Tr. 956). On the issue of Smith's obesity, the ALJ recognized the condition and factored it into Smith's RFC—she had a body mass index of 41.99 in 2017, placing her in the "morbidly obese range"—but concluded none of the treating physicians "reported that the claimant's obesity results in severe symptoms and limitations of function." (Tr. 27, 1271). Indeed, the same record noting a BMI of 41.99 also described Smith's ability to walk four days a week. (Tr. 1271). In total, the ALJ concluded that the record simply did not reveal severe symptoms of the sort urged by Smith. (Tr. 26-27).

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Smith can perform her past relevant work given her designated RFC. The ALJ determined Smith cannot perform any past relevant work. (Tr. 27). At Step Five, the ALJ analyzed whether Smith can successfully adjust to other work. The ALJ noted that if Smith had the RFC to perform the full range of medium work—in other words, if Smith's RFC matched perfectly with the medium work Medical-Vocational Guidelines (the "Grids")—then the Grids would direct a finding of not disabled; but, additional limitations impede Smith's ability to perform all or substantially all of the medium work requirements. Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Smith's occupational base to perform medium work. The VE testified Smith is able to perform work as a hand packer, assembler, or machine feeder even after considering all of the limitations in Smith's RFC. (Tr. 28).[3] The ALJ then found these jobs exist in significant numbers in the national economy and concluded Smith is not disabled. (Tr. 28-29).

## IV.  Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*,

---

[3] The ALJ's RFC designation states that Smith was to "never work … with or around moving machinery." It is not clear how the job of "machine feeder" coexists, if at all, with this limitation. However, Smith does not challenge this potential oversight and, so, the Court will treat it as a harmless error at worse.

7

240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

V.  **Discussion**

Smith alleges the ALJ erred in two respects. First, Smith argues her designated RFC is not supported by "some medical evidence" as is "required under the standards" contained in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Specifically, Smith asserts that "the decision failed to comment upon evidence that was favorable to the plaintiff" and thus "failed to consider all the medical evidence" available to the ALJ. Second, Smith argues the hypothetical question posed to the vocational expert "fails to properly consider [her] limitations or the concrete consequences of [her] impairments." She explains "the findings of residual functional capacity are not supported by substantial evidence. As a result, the response of a

8

vocational expert to a flaw hypothetical question does not represent substantial evidence."

### A. Adequacy of the ALJ's RFC Determination

Regarding Smith's first argument, this Court has previously explained that *Singh* and *Lauer* require, in essence, that the ALJ "draw from the medical records as a whole in formulating an RFC; however, it is the ALJ who determines the appropriate weight and credibility given to the medical records in total—records that are often conflicting as between providers or by a single provider over multiple visits." *Chandler v. Berryhill*, 2018 WL 5786267 at *4 (E.D. Mo. Nov. 5, 2018). Notwithstanding, Smith takes issue with the fact that the ALJ did not discuss or otherwise rely upon records that she believes are beneficial to her. The ALJ is under no such compulsion.

"[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). To be sure, even if one of Smith's treating physicians outright declared that she was unable to perform any work, such a "beneficial" record would be rightly disregarded—an RFC determination lies in the sound discretion of the ALJ, not a medical provider. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1011 (8th Cir. 2019) (provider's determination that claimant could only perform "sedentary work" was an "ultimate determination" that was "reserved to the Commissioner, so the ALJ properly declined to weigh it"). The question then, properly framed, is whether the total medical record—on balance—justifies the conclusions drawn by the ALJ; in other words, the ALJ's decision must lie within the discretional "zone of choice" such that the ALJ resolved any conflicting evidence through the marshalling of

9

substantial evidence to support his or her chosen conclusion. *See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). And in that endeavor, the ALJ "is not required to discuss every piece of evidence submitted." *Hensley*, 829 F.3d at 932 (*quoting Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Indeed, even if the ALJ fails to discuss a particular medical record, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Chaney v. Colvin*, 812 F.3d 672, 678 (8th Cir. 2016).

Taken together, then, the Court must determine whether the record—notwithstanding the existence of "beneficial" records favoring Smith—supports, in total, the determination of the ALJ. The Court has little difficult concluding that it does. There is a dearth of evidence indicating Smith's limitations are greater than those identified in the RFC. Instead, the record routinely reveals that Smith's symptomology is mild, well-controlled, improving, and/or normal or near-normal. (Tr. 341, 366, 371, 398, 672, 683, 801-03, 832, 842, 956, 1271-1273). Often, Smith acknowledges this reality in her brief; she agrees, for example, that Dr. Thomas Forget concluded in 2011 that she was "doing very well" following an aneurysm coiling and that she had only "mild headaches" at the time. (Tr. 341). But, she says, she later saw Forget in 2013 complaining of "chronic headaches"—a point the ALJ did not address. Be that as it may, the actual record is less favorable than Smith would portray it. Forget did acknowledge Smith's own subjective complaints of chronic migraines but also noted "[w]ith regard to her headaches, I think she just needs a trial of different medications[.]" (Tr. 349). Certainly this relaxed observation is not of a quality sufficient to turn the scales in Smith's favor—indeed, she makes no reference to any functional limitations imposed by doctors as a result of these

migraines and the record seems to taper off regarding similar complaints in the months that followed, wherein she mostly complained of back, knee, hip, chest, ear, fingers, and/or tooth pain with little-to-no reference to migraines. (Tr. 609, 621, 632, 649, 661, 671, 684, 698, 709). In fact, by 2014 it was noted that she was having no headaches. (Tr. 720).

Similarly, Smith emphasizes how Dr. Veronica Weston "completed a handwritten document [indicating she] had a New York Heart Association Class II finding," which Smith says "indicates mild symptoms (mild shortness of breath and/or agina) and slight limitations during ordinary activity" attributable to coronary artery disease.[4] It is not altogether clear why Smith brings this record to the Court's attention, because it would appear only to undermine her position. In any event, the record again reveals that it is not as Smith portrays it. Weston noted that "clinical examination" were normal. However, "*by history*, New York Heart Association Class II." (Tr. 886 (emphasis added)). In this statement, it is not made clear what "history" Weston considered—Smith's subjective complaints or some collection of medical records based on objective clinical findings—but, whatever the case, it is not the smoking gun that Smith would suggest it is; to the contrary, Weston's comments favor the ALJ's determination and closer inspection of the record itself reveals yet more normal-or-near-normal clinical findings. (Tr. 885-887).

At bottom, the Court has considered the full record and finds that the ALJ's decision was within the permissible zone of choice—there is substantial evidence

---

[4] See American Heart Association, Classes of Heart Failure, https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure (last visited July 15, 2019).

supporting the ALJ's RFC determination. And even if it be the case that "substantial evidence also supports the contrary outcome," it is the very function of the ALJ to resolve those conflicts; as such, "this court [will] not reverse even if it would have reached a different conclusion." *Nash v. Commissioner*, 907 F.3d 1086, 1089 (8th Cir. 2018). The Court denies Smith's first point.

**B. Sufficiency of the ALJ's Hypothetical Question to the Vocational Expert**

Smith's second argument is that the ALJ erred when submitting a "hypothetical question [to] the vocational expert [that] fail[ed] to properly consider [her] limitations or the concrete consequences of [her] impairments." A hypothetical question is "properly formulated if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). Thus, so long as the ALJ's decision is supported by substantial evidence, he or she is free to include only those impairments and limitations that are deemed credible. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). Consequently, this argument is a redundancy to Smith's first argument attacking the evidentiary basis of the ALJ's RFC determination; indeed, she acknowledges that this is a secondary justification for reversing the ALJ that is narrowly predicated on the fact that "the findings of the functional capacity" were incorrect. But even if it could be deemed independent, Smith never actually explains *how* the hypothetical question failed to capture "the concrete consequences of [her] impairments." Without the benefit of a fully-formed argument that articulates exactly how the ALJ erred, the Court will refrain from inventing arguments on Smith's behalf or otherwise critiquing the ALJ on its own.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 19th day of July 2019.

                                                 STEPHEN N. LIMBAUGH, JR.
                                                 UNITED STATES DISTRICT JUDGE